DeAnne Casperson, Esq. (ISB No. 6698)
dcasperson@workandwage.com
Amanda E. Ulrich, Esq. (ISB No. 7986)
aulrich@workandwage.com
Ryan S. Dustin, Esq. (ISB No. 8683)
rdustin@workandwage.com
CASPERSON ULRICH DUSTIN PLLC
356 W. Sunnyside Rd., Suite B
Idaho Falls, ID 83402
Telephone: (208) 524-0566
Facsimile: (208) 745-2523

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AMELIA MANLEY,<br><br>　　　　　Plaintiff,<br>v.<br><br>WINSUPPLY INC., and WINSUPPLY BOISE ID CO.,<br><br>　　　　　Defendants. | Case No. _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Filing Fee: $402.00 |

Plaintiff, Amelia Manley, by and through her counsel of record, Casperson Ulrich Dustin PLLC, and as a cause of action against WinSupply Inc., and WinSupply Boise ID Co., complains and alleges as follows:

**JURISDICTION AND VENUE**

1. This is an action brought under the Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; and the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq.*.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Venue in this action properly lies in the United States District Court for the District of Idaho, Southern Division, pursuant to 28 U.S.C. § 1391(a) because the defendants reside in this

1　–　COMPLAINT AND DEMAND FOR JURY TRIAL

judicial district; and venue also properly lies in this district pursuant to 42 U.S.C. § 2000e-5(f)(3) because Manley would have worked in this judicial district but for the unlawful employment practices alleged in this Complaint.

## PARTIES

4. Plaintiff Amelia Manley ("Manley") is a female citizen and resident of the United States of America, who, at all times pertinent to this matter, resided in Bannock County, Idaho.

5. Defendant WinSupply Inc. is a Delaware corporation doing business in Idaho.

6. Defendant WinSupply Boise ID Co. is a Delaware corporation doing business in Idaho, and is formerly known as WinSupply Pocatello ID Co.

7. Defendants WinSupply Inc., and WinSupply Boise ID Co. are collectively referred to hereinafter as "Defendants."  At all times material to the Complaint, Defendants were joint employers or constituted a single employer of Plaintiff.

8. At all times relevant to this Complaint, Defendants regularly employed fifteen or more persons, and were engaged in an industry affecting commerce. Consequently, Defendants' conduct is properly regulated by Idaho Code § 67-5901, *et seq.*; and 42 U.S.C. § 2000e, *et seq*.

## FACTS COMMON TO ALL COUNTS

9. Manley realleges and incorporates by reference paragraphs 1 through 8 as though fully set forth herein.

10. Manley began working for Defendants in March 2017, at their former location in Pocatello, Idaho.  Manley was hired to work as the "president" of the Pocatello location.

11. Manley had 17 years of industry experience. Fifteen of those years were management experience, and Manley was well-qualified for the position.

12. During Manley's interview, which was conducted by Rick Jensen (who was Defendants' Salt Lake City president) and Kyle Buxton ("Buxton"), Defendants' Western Regional Manager, Buxton emphasized to Manley that she would need to fully commit to the company, and inquired about her childcare situation to ensure she could dedicate herself to the job.

13. On information and belief, male candidates were not asked about their childcare situation nor did they have their commitment to the job questioned based upon having children.

14. Although Defendants offered stock as part of their benefits package for presidents, and had offered both the prior president (who was male) and subsequent president (who is male) stock, Manley was not offered stock. Instead, she was told when she was hired that Defendants were going to wait a few years before letting her become an owner and buy in.

15. Manley accepted the position and received good performance reviews. Manley worked to increase profits at the Pocatello location and began looking at possibly relocating Defendants' Idaho facility from Pocatello to Boise in order to further grow Defendants' business.

16. Manley reported to Buxton and shared this relocation idea with him but, each time she raised the issue, Buxton rejected it.

17. Once Manley began her position as president, she became aware of evident hostility towards her. Manley was targeted for harassment and discrimination by staff members at the Pocatello location, who seemed to be opposed to a younger woman being in charge.

18. Staff members at Manley's location, most of whom were men, reported to upper management that she was "leaving the store to go home." Manley did leave the store to go home, but only at lunch, which was permitted, and did so in order to nurse her infant

daughter. The staff members at the Pocatello location knew Manley was going home at lunch to nurse, but still reported her to upper management, attempting to get her in trouble.

19. Employees at the Pocatello location would rifle through Manley's office when she was out on sales calls, which Manley noticed because items were out of place when she returned to her office.

20. Multiple staff members anonymously called OSHA to harass Manley for reasons such as Manley having her young child in her office with her on a few occasions in the summer, which was not against Defendants' policy, nor was there a safety issue given that Manley's office was entirely separate from the warehouse and Manley never allowed her daughter to leave her office; and for Manley wearing sandals in her office because Defendants were having a company barbeque.

21. Staff members also refused to follow Manley's direction when directly asked by Manley to do certain tasks.

22. When Manley raised these issues with, and other issues with the staff being uncooperative and discriminatory to Buxton and management consultant Rebecca Lopez ("Lopez"), she was told to "put on [her] big girl panties." Nothing by her superiors was done to stop the harassment and discrimination.

23. Further, when Manley sought to put an end to the behavior and discipline an employee who was particularly insubordinate to her, Buxton would not allow Manley to do so. After Manley raised numerous concerns about this employee, Buxton finally agreed the employee should be terminated, but would not allow Manley to handle the termination because, according to Buxton, he did not want the employee filing a lawsuit for discrimination because he was an older man and Manley was a younger woman.

24. In late 2018, Manley informed Buxton that she was pregnant. The possibility of a temporary replacement while Manley was out on maternity leave was discussed at that time.

25. In February 2019, Manley again discussed her need for maternity leave. Manley requested reasonable modifications to her duties to accommodate her pregnancy including but not limited to the suggestion that salesperson Scott Carlisle ("Carlisle") serve as interim president while she would be on maternity leave.

26. In response to Manley's requests and in the presence of Carlisle, Buxton suggested that, "maybe it is was time that [Manley] stay home and take care of [her] children" and to let her "husband be the bread winner."

27. Manley told Buxton his comments were inappropriate and that he would not make those types of comments if Manley was a man.

28. Buxton then told Manley she was being demoted to an inside sales representative position, with a $15,000 decrease in pay.

29. Shortly before Manley became president, Defendants had demoted the former president, who is male. He had also been demoted to an inside sales representative position as well, but was allowed to keep his previous pay.

30. In March 2019, Manley began maternity leave and Carlisle was moved into the position of president. Carlisle had only worked in sales and had no management experience in comparison to Manley's 15 years of management.

31. Manley returned from maternity leave in July 2019 where she assumed the duties of inside sales representative due to Buxton demoting her.

32. Carlisle, in his role as president, suggested many of the same ideas to grow the business as Manley had, including moving the business to Boise. However, instead of rejecting the ideas as he had done with Manley, Buxton would allow Carlisle to take action on them.

33. In July 2019, Manley was informed by management that the Pocatello location was closing and being relocated to Boise in September 2019.

34. Manley was offered to retain her inside sales representative at the new location in Boise, but could not afford the relocation due to her significant pay reduction from the demotion. As a result, Manley had no choice but to end her employment and look for other work.

35. Manley would have relocated to Boise and continued working for Defendants had she remained in her role as president and/or retained her wages in that position or in sales. As a result, she was constructively discharged.

36. In or about November 2019, Manley dually filed a Charge of Discrimination with the Idaho Human Rights Commission ("IHRC") and Equal Employment Opportunity Commission ("EEOC").

37. On or about May 15, 2020 Manley amended her original Charge of Discrimination to include retaliation.

38. On or about August 26, 2021, Manley received her Notice of Right to Sue.

39. Manley has exhausted her administrative remedies.

## COUNT ONE
## VIOLATION OF TITLE VII/IHRA
### (Sex/Pregnancy Discrimination)

40. Manley realleges and incorporates by reference their respective paragraphs 1 through 39 as though fully set forth herein.

41. Manley is female and therefore belongs to a protected class under Title VII of the Civil Rights Act and the Idaho Human Rights Act.

42. Manley was pregnant at times pertinent to this Complaint, and therefore also belongs to an additional protected class under Title VII of the Civil Rights Act and the Idaho Human Rights Act.

43. Manley was subjected to gender discrimination and pregnancy discrimination, when she was was not provided the same terms and conditions of employment as male presidents of the Pocatello location, was subjected to hostile conduct from her coworkers, and was subjected to inappropriate and discriminatory comments and actions from Buxton, including a demotion with reduction in pay when she requested the accommodation of time off to give birth to and care for her newborn child, and to medically recover from the birth, as well as constructive discharge.

44. The conduct of Manley's coworkers and Buxton was based upon Manley's sex and pregnancy.

45. Manley perceived her working environment to be abusive and/or offensive.

46. A reasonable woman in Manley's circumstances would consider the working environment to be abusive and/or offensive.

47. Manley suffered tangible employment actions, including but not limited to being subjected to demotion, loss of pay, and constructive discharge.

48. As a direct and proximate result of actions and/or failures to act, Manley has suffered, and will continue to suffer, emotional distress, consisting of outrage, shock, and humiliation, reasonably occurring and likely to occur based on the gender and pregnancy discrimination

48. she experienced. Manley is therefore entitled to general and compensatory damages, in an amount to be proven at trial, as well as any other equitable remedies available to her.

49. Defendants' direct and proximate conduct was willful or done with a reckless disregard for Manley's federally protected rights, for which Manley is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(a).

## COUNT TWO
## VIOLATION OF TITLE VII/IHRA
### (Retaliation)

50. Manley realleges and incorporates by reference their respective paragraphs 1 through 49 as though fully set forth herein.

51. Manley engaged in a protected activity under Title VII and the Idaho Human Rights Act when, among other things, she reported discriminatory conduct by her coworkers to her supervisor, and objected to Buxton's discriminatory comments and treatment of her.

52. Manley was subjected to adverse employment actions as a result of her protected activity, including but not limited to Buxton's taking action to demote Manley and reduce her pay, as well as constructively discharging Manley.

53. Buxton discriminated against Manley and retaliated against Manley due to her engaging in protected activity.

54. As a direct and proximate result of Defendants' actions and/or failure to act, Manley has suffered and will continue to suffer, lost wages, loss of employment opportunities, as well as emotional distress, consisting of outrage, shock, and humiliation, reasonably occurring and likely to occur based upon the discriminatory and retaliatory actions of Defendants. Manley is therefore entitled to general and compensatory damages, in an amount to be proven at trial, as well as any other equitable remedies available to her.

55.   Defendants' conduct was willful or done with a reckless disregard for Manley's federally protected rights, for which Manley is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(a).

## ATTORNEY'S FEES

56.   As a further direct and proximate result of Defendants' actions and/or failure to act, Manley has been compelled to retain the services of counsel, and have incurred and will continue to incur costs and attorney's fees. Manley is therefore entitled to attorney's fees and costs incurred in pursuing this action pursuant to 42 U.S.C. § 1981(b) and 42 U.S.C. § 2000e-5(k).

## DEMAND FOR JURY TRIAL

Manley demands trial by jury as to all issues triable to a jury in this action.

## PRAYER FOR RELIEF

Manley seeks the judgment of the Court against Defendants as follows:

1.   For general and compensatory damages, and all other statutorily available damages, in an amount to be proven at trial;

2.   For any equitable remedies available to her;

3.   For liquidated and/or punitive damages;

4.   For statutorily available costs and attorney's fees;

5.   For prejudgment interest on all amounts claimed; and

6.   For such other and further relief as the Court deems just and proper.

DATED this 12th day of November, 2021.   /s/
                                          Amanda E. Ulrich, Esq.
                                          CASPERSON ULRICH DUSTIN PLLC

C:\Users\Amanda\Casperson Ulrich Dustin PLLC\Casperson Ulrich Dustin PLLC Team Site - Documents\Active Cases\Manley, Amelia\Pleadings\Complaint.Rev1.wpd:dg

9  –   COMPLAINT AND DEMAND FOR JURY TRIAL